UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMY DAWN FLEURY,<br><br>                Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security Administration,<br><br>                Respondent. | Case No. 3:17-cv-00007-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Amy Fleury's Petition for Review of the Respondent's denial of social security benefits. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the following reasons, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

**PROCEDURAL AND FACTUAL HISTORY**

Petitioner filed a Title XVI application for Disability Insurance Benefits and Supplemental Security Income on April 12, 2013, alleging disability beginning January 1, 2007. This application was denied initially and on reconsideration, and a hearing was conducted on July 27, 2015, before Administrative Law Judge (ALJ) Donna Walker. After hearing testimony from Petitioner, Petitioner's spouse, medical expert Lynne Jahnke M.D., and from vocational expert Jinnie Lawson, ALJ Walker issued a decision on August 14, 2015, finding Petitioner not disabled as of the amended onset date of April 12, 2013. (AR 16, 40, Dkt. 12.)

Petitioner requested review by the Appeals Council, which denied her request on November 7, 2016. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the July 27, 2015 hearing, Petitioner was 32 years of age.[1] Petitioner completed high school and attended some college, and her prior work experience includes work as a stock clerk, nursing school attendant, nursing assistant, general clerk, and pharmacy technician. (AR 54, 27.) She alleged disability because of fibromyalgia, migraine headaches, irritable bowel syndrome, fatty liver disease, depression, insomnia, borderline diabetes, restless leg syndrome, myalgias, malaise, and

---

[1] Petitioner's birthdate is July 30, 1982. She was just shy of her 33rd birthday at the time of the hearing.

**MEMORANDUM DECISION AND ORDER - 2**

fatigue. (AR 24, 80.)

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity after her amended onset date of April 12, 2013.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's obesity, fibromyalgia, degenerative disc disease, and migraine headaches severe within the meaning of the Regulations.[2]

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically considering Listing 11.03 (epilepsy non-convulsive) for her migraine headaches and Listing 1.04 for disorders of the spine. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that Petitioner retained the RFC to perform light work, with

---

[2] The ALJ determined Petitioner suffered also from obesity and degenerative disc disease, as reflected in the medical records and based upon the testimony of the medical expert, Dr. Lynne Jahnke. (AR 45-52.) The ALJ did not find Petitioner's other alleged impairments to be severe, and Petitioner does not contest the ALJ's step two finding.

**MEMORANDUM DECISION AND ORDER - 3**

the ability to lift and carry up to twenty pounds occasionally and ten pounds frequently; sit up to six hours; and stand, walk, or both for up to thirty minutes at one time, for two hours each. (AR 24.) The ALJ determined also Petitioner had the unlimited ability to use her upper extremities, and unlimited manipulative, visual and communicative abilities, but that she should only occasionally climb ramps, stairs, balance, kneel, and crouch, and never crawl or climb ladders, ropes or scaffolds. (AR 24.)

Based upon the RFC determination, the ALJ found Petitioner was not able to perform her past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Upon receiving testimony from the vocational expert, the ALJ determined Petitioner retained the RFC to perform the requirements of representative occupations such as production assembler, cashier II, and marker/pricer. (AR 28.) Accordingly, the ALJ concluded Petitioner was not under a disability at any time since the amended onset date of April 12, 2013, and she therefore issued a finding of not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by

substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner argues the ALJ erred at step four, contending the ALJ improperly assessed Petitioner's credibility; improperly discounted the treating nurse practitioner's opinion; and improperly discounted the lay testimony without giving reasons germane to each witness. Respondent disagrees, noting Petitioner's testimony in the record concerning her activities, improvement of her symptoms with conservative treatment and medication, and the lack of objective medical evidence to support Petitioner's claims of disabling symptoms and limitations. Respondent contends also that the ALJ gave sufficient reasons to discount the opinions of the treating nurse practitioner and the lay witnesses.

1.  **Petitioner's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying

impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant

complains. *Thomas*, 278 F.3d at 958-59. Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ provided several clear and convincing reasons to support her adverse credibility finding. First, the ALJ inferred from medical evidence in the record that Petitioner's pain was not as disabling as Petitioner reported, because after her amended onset date of April 12, 2013, Petitioner informed her health care providers that her symptoms improved with conservative treatment. Specifically, Petitioner described increased energy and alleviation of her pain symptoms with a change in her diet and an increase in her activity level, which included water therapy. (AR 25.) As for her headaches and generalized reports of pain, Petitioner similarly conveyed to her health care providers that she experienced improvement in 2014 with over-the-counter medications, and that her headaches had reduced in frequency and severity as well. And, regarding her fibromyalgia symptoms, Petitioner reported improvement with medication. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Petitioner's favorable response to

**MEMORANDUM DECISION AND ORDER - 8**

conservative treatment undermines her reports regarding the disabling nature of her pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Second, a failure to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain and may form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007). Here, the ALJ noted Petitioner ceased following a healthy diet and discontinued exercising, despite being counseled by her health care providers that she would experience significant improvement in her symptoms if she were to continue eating a healthy diet and exercising. (AR 25.)

Third, the ALJ noted that Petitioner consistently had normal findings upon physical examination despite Petitioner's self-reports of disabling symptoms. (AR 25.) The ALJ noted that, in April of 2013, Petitioner had full strength, sensation, range of motion and reflexes, and that such findings were consistently reported upon examinations in 2014 and 2015. The ALJ concluded that such normal physical findings undermined Petitioner's credibility, because one would expect to see evidence of atrophy or muscle weakness in the record given Petitioner's complaints of pain caused by fibromyalgia, yet there were no such findings. (AR 25-26.) *See* SSR 12-2p, *available at* 2012 WL 3104869 *3 n. 9 (indicating the diagnostic criteria used to assess fibromyalgia, which includes muscle weakness).

The ALJ's reasons for discounting Petitioner's testimony concerning the severity and limiting effects of her pain are supported by substantial evidence in the record.

**MEMORANDUM DECISION AND ORDER - 9**

Although there is evidence, as pointed out by Petitioner, that could support an alternative conclusion, it is not for the Court to second guess the ALJ's determination. *Thomas,* 278 F.3d at 959; *Tackett*, 180 F.3d at 1098. Accordingly, the Court will not disturb the ALJ's adverse credibility finding.

## 2. Medical Source Opinion

The ALJ gave the opinions of Petitioner's treating healthcare provider, Robin Hight, NP-C, little weight, because Ms. Hight's assessment of extreme limitations limiting Petitioner to sedentary work for four hours each day with up to four absences each month was not consistent with: the record as a whole; the impartial opinions of Dr. Jahnke, the testifying medical expert; and the state agency physician opinions. (AR 26.) Petitioner disputes the ALJ's interpretation of the record, contending the ALJ's determination is not supported by substantial evidence.

To reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). However, only licensed physicians and certain other qualified specialists[3] are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a) (2015). Nurse practitioners are defined as "other sources," §

---

[3] At the time of the ALJ's determination, acceptable medical sources included licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a) (2015). However, for claims filed after March 27, 2017, acceptable medical sources include licensed advanced practice nurses and licensed physician assistants. 20 C.F.R. § 404.1502(a) (effective March 27, 2017). The regulations cited herein were effective as of the date of the ALJ's determination on August 14, 2015.

**MEMORANDUM DECISION AND ORDER - 10**

404.1513(d), and are not entitled to the same deference, *see* § 404.1527; SSR 06–03p; *Molina*, 674 F.3d at 1111 (opinions from other sources are not entitled to the same deference as those from acceptable medical sources). The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). The ALJ gave several germane reasons for discounting Ms. Hight's opinion in favor of the conflicting testimony of Dr. Jahnke, the testifying medical expert, and these reasons were substantiated by the record.

The ALJ found Ms. Hight's opinion was not consistent with the record as a whole, noting Petitioner's symptoms improved with diet and exercise. Additionally, the ALJ noted that the extreme limitations assigned by Ms. Hight were not consistent with the physical findings, which the ALJ found to be relatively normal. (AR 26.) Here, the ALJ's adverse credibility determination supports the rejection of Ms. Hight's opinion.

The ALJ concluded also that Ms. Hight's opinion concerning Petitioner's work limitations was contrary to the opinion of Dr. Jahnke, the testifying medical expert, and the state agency medical consultants. The ALJ noted that Dr. Jahnke had reviewed the entire record as of the hearing date. Consequently, the ALJ adopted the physical limitations set forth by Dr. Jahnke in his RFC determination.

Petitioner argues Ms. Hight's opinion about absences Petitioner would suffer from work was consistent with the opinion of Dr. Jahnke. However, Dr. Jahnke clarified at the

hearing that her opinion about absences was based upon Petitioner's subjective complaints, and that if the objective medical evidence was considered alone, she would not predict Petitioner would miss any days of work due to her impairments. (AR 53.) The ALJ correctly identified that, given Dr. Jahnke's testimony, the central issue to resolve was Petitioner's credibility regarding how many days of work per month she might miss. (AR 53.) As discussed above, the ALJ's credibility assessment was free from legal error. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") Based upon the record as a whole, the ALJ reasonably rejected Ms. Hight's opinion, and gave germane reasons for doing so.

Petitioner asserts that the evidence before the ALJ supports an alternative interpretation. However, in such close cases, the Court must defer to the ALJ's decision provided the ALJ offers a reasonable interpretation of the record based upon substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court finds the ALJ did so here.

3.  **Lay Witness Testimony**

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to demonstrate the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must consider, unless she expressly determines to disregard such testimony and

gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

### A. Melanie Hayes

Melanie Hayes, Petitioner's sister, submitted a statement describing Petitioner's physical limitations. Hayes stated Petitioner was able to care for herself and her children, perform household chores as needed, grocery shop, and drive a car. She added that Petitioner was unable to lift more than ten pounds, had difficulty standing and walking, and difficulty with stair climbing, squatting, kneeling, and bending. (AR 240 – 248.) The

ALJ gave the statements little weight, because they were inconsistent with Petitioner's reported.

Petitioner argues the ALJ mischaracterized the statements, and contends the reasons given for rejecting Petitioner's credibility were inadequate. Here, the ALJ gave reasons for rejecting Petitioner's testimony regarding her symptoms and limitations, which were equally relevant to the testimony of Petitioner's sister, and that would support a finding that Hayes's testimony was similarly not credible. The ALJ discussed Petitioner's activities, as Hayes reported Petitioner was able to care for her children, shop, do household chores, drive a car, and prepare meals. (AR 26.) The ALJ found Petitioner's reported activities inconsistent with the level of limitations Petitioner alleged. (AR 26.) Accordingly, because Hayes's testimony was similar to Petitioner's complaints of disabling pain, it follows that the ALJ gave germane reasons for rejecting Hayes's testimony. *See Valengine v. Comm'r Sos. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ gave clear and convincing reasons for rejecting the petitioner's own subjective complaints, the ALJ could rely on the same to reject the lay witness testimony which was similar to such complaints).

### B.  Justin Fleury

Justin Fleury, Petitioner's husband, testified Petitioner's activities were limited because she required rest due to pain, suffered frequent migraine headaches, had frequent bowel issues, and had some good days and some bad days. (AR 65 – 68.) In his written statement, Mr. Fleury stated Petitioner cared for their children, shopped, paid bills, and

attended to her own personal care. (AR 278 – 286.) However, Mr. Fleury indicated Petitioner was limited in her ability to lift, squat, kneel, stand, bend, and climb stairs. (*Id.*) The ALJ gave some weight to Mr. Fleury's statements, finding them not entirely consistent with the medical evidence of record which documented improvement with conservative treatment measures, such as diet and exercise, as well as relatively normal physical findings. (AR 27.)

Petitioner argues the ALJ mischaracterized the evidence of record, and that the medical evidence did not show improvement. Inconsistency with objective medical evidence is, however, a germane reason for discounting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ accepted Mr. Fleury's testimony[4] insofar as it was consistent with the medical evidence of record and rejected portions of his testimony and other statements contained in the record that did not meet this standard. The ALJ discussed Petitioner's improvement with diet and exercise, and the relatively normal physical findings upon examination in her credibility assessment. The ALJ, tasked with resolving ambiguities in the record, is entitled to deference upon review even if there are other reasonable interpretations of the evidence; it is not the Court's role to second-guess the ALJ's interpretation of that evidence where substantial evidence supports the ALJ's conclusion. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court finds the ALJ provided germane reasons for discounting Mr.

---

[4] Mr. Fleury testified at the hearing before the ALJ.

**MEMORANDUM DECISION AND ORDER - 15**

Fleury's statements concerning the limiting effects of Petitioner's pain.

### C. Amanda Stegner

Amanda Stegner, one of Petitioner's former supervisors at Wasem's Pharmacy, reported Petitioner worked for Wasem's for ten months, during which time Petitioner frequently missed scheduled work due to appointments for various medical conditions. Stegner indicated also that Petitioner struggled with daily tasks, such as standing, going up and down stairs, walking, bending, squatting, lifting, and remembering specific work tasks. Her letter further indicated that Petitioner's uncontrollable bowel movements interrupted completion of Petitioner's job duties. She ended the employment relationship because of "the above mentioned medical circumstances." (AR 322.) The ALJ accorded Stegner's statements "some weight," noting that the letter provided a summary of Petitioner's reported difficulties rather than personal observation. Nonetheless, the ALJ indicated she factored Stegner's concerns into the RFC assessment. (AR 27.)

Petitioner contends the ALJ improperly discounted Stegner's statements on the grounds that Stegner did not describe her own observations, and that the RFC did not factor in absenteeism and the need for extra breaks due to the need to use the restroom. With regard to Petitioner's first contention, the Court finds the ALJ's interpretation of Stegner's letter was a reasonable one, given Stegner simply summarized Petitioner's purported difficulties without specifically describing her own observations of Petitioner's work performance. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc.*

*Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Regardless, the ALJ incorporated Stegner's concerns in her RFC finding, by limiting the lifting ability, giving Petitioner sit/stand limitations, and limiting her from stooping, climbing, kneeling, and crouching. (AR 24.)

Turning to Petitioner's other assignment of error, the Court finds the ALJ addressed Petitioner's allegation of absenteeism due to frequent, urgent bathroom breaks. The ALJ determined Petitioner's irritable bowel syndrome was not a severe impairment, and Petitioner did not challenge this finding. (AR 22.) Moreover, the evidence of record indicated the condition was controlled by the time Petitioner filed her disability application. (AR 22, 389.) Additionally, Dr. Jahnke testified at the hearing that Petitioner primarily suffered from constipation, and that Petitioner had the ability to alleviate the symptoms by changing her diet but chose not to do so. (AR 51.)[5]

All of the above constitute germane reasons supported by substantial evidence for discounting the statements in Stegner's letter.[6]

---

[5] Dr. David Martin, one of Petitioner's primary medical care providers, noted on January 22, 2013, that "Amy is fine and would be well if she just lost weight and would exercise and eat healthfully." (AR 389.)

[6] Because the Court finds the ALJ's analysis was free from legal error, it needs not reach Respondent's alternative argument concerning harmless error.

**MEMORANDUM DECISION AND ORDER - 17**

# CONCLUSION

In summary, the Court finds the ALJ's assessment of Petitioner's alleged physical impairments was free of harmful error and supported by substantial evidence. The ALJ did not err in making her credibility assessment, or in her evaluation of the medical source statements and lay witness testimony. Petitioner contends the evidence supports a different interpretation. However, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)

For the foregoing reasons, the Court will affirm the Commissioner's decision, finding that the ALJ's determination was not the product of legal error and was supported by the record as a whole.

# **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: September 21, 2018

_____
Honorable Candy W. Dale
United States Magistrate Judge